UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON**, <br><br> Plaintiff, <br><br> v. <br><br> **FEDERAL ELECTION COMMISSION**, <br><br> Defendant. | Case No. 22-cv-0035 (CRC) |

## MEMORANDUM OPINION AND ORDER

For almost two years, Citizens for Responsibility and Ethics in Washington ("CREW") has been bent on obtaining documents it claims belong in the Federal Election Commission's ("FEC") administrative record for this case. Dogged though its efforts have been, CREW again comes up short.

In 2022, CREW sued the FEC for dismissing its complaint against Freedom Vote—an Ohio-based non-profit that CREW claims failed to organize, register, and report as a political committee as required under federal law. After the FEC initially refused to appear in this lawsuit or produce the administrative record, CREW filed a motion to compel, demanding the agency produce the record and respond to CREW's requests for production. The Court denied the motion on the ground that it lacked jurisdiction over the suit but, following CREW's motion for reconsideration and an intervening clarification of D.C. Circuit law, the Court changed course. It asserted jurisdiction and allotted additional time for the FEC to respond to CREW's motion. The FEC did so, producing what it now certifies as the complete administrative record. CREW, however, claims it is entitled to more: It seeks internal communications and documents reflecting the FEC Commissioners' deliberations about key votes in the Freedom Vote matter.

Because the agency had already produced the record, the Court agreed to construe CREW's motion to compel as one to complete or supplement the record or for extra-record discovery—the proper vehicles to add to the administrative record or seek discovery in record-review cases. None of those pathways affords CREW the relief it seeks, however. The Court therefore denies the motion.

**I.   Background**

  A.  Statutory Framework

Under the Federal Election Campaign Act ("FECA"), 52 U.S.C. §§ 30101 et seq., organizations that qualify as "political committees" must register with the FEC and file periodic reports. See 52 U.S.C. §§ 30102–04. A political committee is "any committee, club, association, or other group of persons" that "receives contributions" or "makes expenditures" of over $1,000 per year to "influenc[e] an[] election for Federal office." Id. §§ 30101(4)(A), 8(A). For FECA to apply, however, the organization must be "under the control of a candidate" or its "major purpose [must be] the nomination or election of a candidate." Buckley v. Valeo, 424 U.S. 1, 79 (1976).

FECA also provides avenues for the FEC to investigate and address statutory violations. As happened here, an individual or organization may lodge a complaint with the FEC that a violation occurred. 52 U.S.C. § 30109(a)(1). Based on the complaint and a recommendation from the agency's Office of General Counsel ("OGC"), the FEC Commissioners vote on whether there is "reason to believe" such a violation has occurred or will occur. Id. § 30109(a)(2); see also 11 C.F.R. § 111.7. Four of the six Commissioners must find "reason to believe" for the case to proceed, after which OGC investigates the complaint and makes a recommendation to the Commissioners about whether there is "probable cause" to believe a violation occurred. 52

U.S.C. §§ 30109(a)(2), (a)(3); see also 11 C.F.R. § 111.16.  Four votes are again required.  52 U.S.C § 30109(a)(4)(A)(i).  If the Commissioners find probable cause, they must first attempt to resolve the matter by "informal methods" of conciliation, and—if that fails—the Commissioners may, again by a four-person vote, decide to file a civil-enforcement suit in federal court.  Id. §§ 30109(a)(4)(A)(i), (a)(6)(A).  If the Commissioners do not find probable cause and vote to dismiss the case, the administrative complainant can file suit in federal court on the ground that the dismissal was "contrary to law."  Id. §§ 30109(a)(8)(A), (a)(8)(C).  A court then may find a dismissal "contrary to law" if "(1) the FEC dismissed the complaint as a result of an impermissible interpretation of the Act, . . . or (2) [] the FEC's dismissal of the complaint, under a permissible interpretation of the statute, was arbitrary or capricious, or an abuse of discretion."  Orloski v. FEC, 795 F.2d 156, 161 (D.C. Cir. 1986).

    B.  Factual and Procedural Background

In August 2018, CREW filed an administrative complaint with the FEC alleging that Freedom Vote qualified as a political committee no later than 2016 but had failed to organize, register, and report consistent with that status.  Compl. ¶ 26.  The complaint also alleged that an advertisement Freedom Vote ran against Ohio U.S. Senate candidate Ted Strickland was an independent expenditure that did not include the required disclaimer.  Id. ¶ 27.  The FEC designated the matter as Matter Under Review ("MUR") 7465.  Id. ¶ 26.  Based on the complaint, OGC recommended the Commissioners find reason to believe Freedom Vote failed to register and report as a political committee and that the advertisement failed to include the necessary disclaimer.  Id. ¶ 29.

In July 2019, the Commissioners agreed, voting unanimously to find reason to believe violations occurred on both counts. Id. ¶ 30.[1] OGC then investigated and, in September 2021, recommended the Commissioners find probable cause to believe a violation occurred. General Counsel's Brief at 28, MUR 7465 (Sept. 20, 2021).[2] Among a number of findings, OGC reported that from 2014 until 2019, over 71% of Freedom Vote's expenditures, aggregating over $3.4 million, constituted federal campaign activity. Id. at 1. Despite OGC's recommendation, in November 2021, the Commissioners deadlocked three-to-three on the vote to find probable cause. Compl. ¶ 39.[3] The Commissioners also considered whether to dismiss the proceedings as an exercise of prosecutorial discretion but again deadlocked. Id. With proceedings at a standstill, four Commissioners—including one who believed probable cause existed—voted to close the case. Id. ¶ 40. The next month, the three Commissioners who had voted to find probable cause issued a statement of reasons recounting the FEC's investigation and the evidence amassed and explaining the rationale for their votes. Id. ¶ 41. The other three Commissioners (the so-called "controlling Commissioners") did not issue a statement of reasons at that time. Id. ¶ 42.

In January 2022, CREW filed this lawsuit, alleging that the FEC's dismissal of its complaint was "arbitrary, capricious, an abuse of discretion, and contrary to law in violation of

---

[1] In July 2019, the FEC had only four Commissioners—Commissioners Hunter, Petersen, Walther, and Weintraub—and all four voted to find reason to believe on the grounds described. See Certification ¶ 2, MUR 7465 (Jul. 29, 2019), https://perma.cc/JBF9-F93Z.

[2] https://perma.cc/4AAV-M9MJ.

[3] By November 2021, the FEC had a full complement of Commissioners. Commissioners Broussard, Walther, and Weintraub voted to find probable cause while Commissioners Cooksey, Dickerson, and Trainor dissented. See Certification ¶ 1, MUR 7465 (Nov. 14, 2021), https://perma.cc/M627-GZYD. Commissioner Broussard agreed with the dissenting Commissioners to close the file. Id. ¶ 3.

52 U.S.C. § 30109(a)(8)(C)." Id. ¶ 45. In early March, the controlling Commissioners belatedly released a statement of reasons, explaining that because the "five-year statute of limitations had expired on the bulk of Freedom Vote's alleged FECA violations," the Commissioners "declined to pursue the alleged violations that were not time-barred" "[i]n an exercise of [their] prosecutorial discretion." Statement of Reasons of Chairman Allen Dickerson and Commissioners Sean J. Cooksey and James E. "Trey" Trainor, III at 1, MUR 7465 (Mar. 7, 2022).[4]

Because the Commissioners had not voted to authorize defense of this lawsuit, see 52 U.S.C. § 30107(a)(6), the FEC did not appear or respond to the complaint. The Clerk thus docketed an Entry of Default, Entry of Default [ECF No. 5], and CREW moved to compel the FEC to produce the administrative record and respond to requests for production, Mot. to Compel [ECF No. 6]. In February 2023, the Court denied the motion to compel without prejudice on the ground that it likely "lack[ed] jurisdiction to review the FEC dismissal challenged in the complaint." Feb. 8, 2023 Min. Order. The Court relied on the D.C. Circuit's opinion in CREW v. FEC ("New Models"), which held that federal courts "lack the authority to second guess a dismissal based even in part on enforcement discretion." 993 F.3d 880, 882 (D.C. Cir. 2021).

CREW filed a motion for reconsideration and then in August followed up with a notice of supplemental authority, citing to the recent D.C. Circuit opinion in End Citizens United PAC v. FEC ("ECU"), 69 F.4th 916 (D.C. Cir. 2023). See Mot. for Recon. [ECF No. 9]; Notice of Supp. Auth. [ECF No. 10]. In ECU, the circuit held that to "determine whether the [FEC] exercised its prosecutorial discretion . . . in effecting a deadlock dismissal, the court looks . . . to the statement

---

[4] https://perma.cc/WD4Y-8ZMQ.

of reasons of the controlling Commissioners." 69 F.4th at 921.  But when the statement of reasons is issued "after the commencement of [federal] litigation and the expiration of the statutory deadline to challenge the dismissal," it is a "*post hoc* rationalization[]" not "properly before the court as an explanation of the controlling Commissioners' votes."  Id. at 921–22.  Because the controlling Commissioners' statement of reasons in this case was issued on March 7, 2022—after the sixty-day window for CREW to challenge the dismissal, see 52 U.S.C. § 30109(8)(a)(B), and more than two months after CREW filed suit—the Court determined it could not rely on the statement's invocation of prosecutorial discretion as a basis for declining jurisdiction.  Oct. 30, 2023 Min. Order.  The Court thus decided to reconsider CREW's motion to compel and gave the FEC additional time to oppose that motion.  Id.

Soon after, the FEC appeared in this lawsuit for the first time and agreed to produce the administrative record.  Mot. to Set Schedule [ECF No. 13].[5]  It did so, but CREW was not satisfied with the record the agency produced and now claims the record should include the following category of documents:

> Documents, other than the certified votes and post-hoc explanations, reflecting the Commissioners' discussion of and rationale for voting to find reason to believe in July 2019, and its deadlocked votes on probable cause and prosecutorial discretion in November 2021, including any records of the meetings at which those votes were taken.

Joint Status Report [ECF No. 16] at 2.[6]  The FEC opposed the inclusion of those documents in the record.  It also noted that the "categories of documents responsive to this request include

---

[5] The Commission authorized agency counsel to complete the administrative-record requirements, see Mot. to Set Schedule at 4, and to oppose the motion to compel, see Opp'n at 8 n.1.

[6] The parties initially disputed a second category of documents.  See Joint Status Report at 1.  But after CREW obtained the documents through a Freedom of Information Act request

executive-session recordings, draft statements of reasons, and communications regarding planned votes and draft statements of reasons." Opp'n [ECF No. 20] at 13.

After the FEC produced the administrative record, the case stood in an unusual posture. Recall that CREW originally filed a motion to compel production of the record. Once the FEC produced the record, the proper vehicle to seek inclusion of the disputed documents would have been a motion to complete or supplement the record or for extra-record discovery. Ordinarily, the Court would have denied CREW's motion and required it to refile the proper motion. But, because of the unique way the case unfolded and the long pendency of CREW's original motion, the Court informed the parties that it was "prepared to construe [CREW's] motion to compel as one to complete or supplement the record." Min. Order April 3, 2024. The Court permitted CREW either to file a new motion addressing the applicable standards for completion and supplementation or to request that the Court treat its motion as one to complete or supplement. CREW opted for the latter. Pl.'s Resp. [ECF No. 26] at 1.[7] Because CREW initially served requests for production, the Court will also consider whether it is entitled to extra-record discovery.

## II. Legal Standard

When assessing challenges to agency action, "the court shall review the whole record or those parts of it cited by a party." 5 U.S.C. § 706.[8] The "whole record" "consists of all

---

and the FEC agreed to include them in the administrative record, CREW withdrew its motion as to those documents. Stip. & Joint Mot. [ECF No. 18] at 1–2.

[7] In its opposition to CREW's motion to compel, the FEC briefed the motion as if it was one to complete or supplement. See Opp'n at 9–11. It also filed a response to CREW's notice opting for the Court to construe the motion as one to complete or supplement. See Def.'s Resp. [ECF No. 27].

[8] This is the standard for challenges brought under the Administrative Procedure Act ("APA"). Both parties, however, suggest that cases brought under 52 U.S.C. § 30109(a)(8)

7

documents and materials that the agency directly or indirectly considered, no more and no less." Oceana, Inc. v. Ross ("Oceana II"), 290 F. Supp. 3d 73, 77 (D.D.C. 2018) (cleaned up). Materials that were not considered by the agency fall outside the record, even if they exist and may be relevant to the plaintiffs' challenge.  See Maritel, Inc. v. Collins, 422 F. Supp. 2d 188, 196 (D.D.C. 2006).  Nor are "predecisional" and "deliberative" documents part of the administrative record.  Oceana II, 290 F. Supp. 3d at 82–83.

An agency is "entitled to a strong presumption of regularity that it properly designated the administrative record." Id. at 77 (cleaned up).  Because of this presumption, "[s]upplementation of the administrative record is the exception, not the rule." Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs, 448 F. Supp. 2d 1, 5 (D.D.C. 2006).

Still, a party may seek to add materials to the administrative record in two ways.  First, a movant can seek to complete the record with inclusion of "evidence that should have been properly a part of the administrative record but was excluded by the agency." Nat. Res. Def. Council, Inc. v. Doremus, No. 20-cv-1150 (CRC), 2021 WL 2322349, at *2 (D.D.C. June 7, 2021) (cleaned up).  A party taking this route must "put forth concrete evidence and identify reasonable, non-speculative grounds for [its] belief that the documents were considered by the agency and not included in the record." Id. (cleaned up).  Additionally, the plaintiff must "identify the materials allegedly omitted from the record with sufficient specificity, as opposed

---

apply the APA standard. See Opp'n at 9–11; Reply at 1–2.  The D.C. Circuit has also borrowed from APA jurisprudence in assessing the record in FECA cases, see, e.g., ECU, 69 F.4th at 921, and has noted that language in FECA is "consistent" with the APA's judicial review provisions, CREW v. FEC, 892 F.3d 434, 437 (D.C. Cir. 2018) ("APA Chapter 7 contains the APA's judicial review provisions.  See 5 U.S.C. §§ 701–706.  Rather than 'expressly' contradicting those provisions, FECA is consistent with them."); see also New Models, 993 F.3d at 892 ("'[C]ontrary to law' review under FECA [] mirrors 'not in accordance with law' review under the APA.").

8

to merely proffering broad categories of documents and data that are 'likely' to exist." Nat'l Parks Conservation Ass'n v. Dep't of Interior, No. 20-cv-3706 (RC), 2023 WL 1860960, at *5 (D.D.C. Feb. 9, 2023) (cleaned up).

Alternatively, movants can seek to supplement the record with "extra-judicial evidence that was not initially before the agency" but that they believe should nonetheless be included. Nat. Res. Def. Council, Inc., 2021 WL 2322349 at *2 (cleaned up). This method requires the moving party to "demonstrate unusual circumstances justifying a departure from th[e] general rule" against including extra-record evidence. City of Dania Beach v. F.A.A., 628 F.3d 581, 590 (D.C. Cir. 2010) (cleaned up). The D.C. Circuit has recognized three such circumstances: "(1) if the agency deliberately or negligently excluded documents that may have been adverse to its decision, (2) if background information is needed to determine whether the agency considered all the relevant factors, or (3) if the agency failed to explain administrative action so as to frustrate judicial review." Id. (cleaned up)

Plaintiffs also may seek discovery in record-review cases. But discovery is highly disfavored. It is available only upon a showing that the agency has engaged in "bad faith or improper behavior" or in "the rare case in which the record is so bare as to frustrate effective judicial review." Cmty. for Creative Non-Violence v. Lujan, 908 F.2d 992, 997–98 (D.C. Cir. 1990).

### III. Analysis

As noted, CREW seeks the omitted documents through three pathways: completion of the record, supplementation of the record, and extra-record discovery. Traversing each, the Court arrives at the conclusion that CREW is not entitled to the documents.

A. <u>Completion of the Record</u>

The FEC claims the omitted documents fall outside the administrative record because they are protected by the deliberative-process privilege, attorney-client privilege, and work-product doctrine. The Court agrees as to the documents' deliberative-process protection but finds the agency has not met its burden of demonstrating the elements of the attorney-client privilege or work-product doctrine.

*1. Deliberative-Process Privilege*

Courts in this District have long held that materials that fall within the scope of the deliberative-process privilege are not part of the administrative record. <u>See, e.g.</u>, <u>Am. Petroleum Tankers Parent, LLC v. United States</u>, 952 F. Supp. 2d 252, 265 (D.D.C. 2013). The justification for this limitation is two-fold. First, "[d]eliberative documents are excluded from the record because, when a party challenges agency action as arbitrary and capricious, the reasonableness of the agency's action 'is judged in accordance with its stated reasons.' '[T]he actual subjective motivation of agency decisionmakers is immaterial as a matter of law—unless there is a showing of bad faith or improper behavior.'" <u>Nat'l Ass'n of Chain Drug Stores v. Dep't of Health & Human Services</u>, 631 F. Supp. 2d 23, 27 (D.D.C. 2009) (second alteration in original) (quoting <u>In re Subpoena Duces Tecum Served on the Office of Comptroller of Currency</u>, 156 F.3d 1279, 1279–80 (D.C. Cir. 1998)). Second, protecting internal, deliberative materials helps "enhanc[e] the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." <u>Oceana, Inc. v. Pritzker</u> ("<u>Oceana I</u>"), 217 F. Supp. 3d 310, 319 (D.D.C. 2016), <u>aff'd sub nom.</u> <u>Oceana, Inc. v. Ross</u>, 920 F.3d 855 (D.C. Cir. 2019) (quoting <u>Dep't of Interior v. Klamath Water Users Protective Ass'n</u>, 532 U.S. 1, 9 (2001)). After all,

"officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." Id. (quoting Klamath Water, 532 U.S. at 8–9).

In determining whether a document falls within the scope of the deliberative-process privilege, courts in this District apply the same test used in Freedom of Information Act or common-law privilege cases. See, e.g., Am. Petroleum Tankers, 952 F. Supp. 2d at 269 & 269 n.9. "Two requirements are essential to the deliberative process privilege: the material must be predecisional and it must be deliberative." In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997). A document is predecisional "if it was generated before the adoption of an agency policy" and it is deliberative "if it reflects the give-and-take of the consultative process." Am. Petroleum Tankers, 952 F. Supp. 2d at 265 (quoting Judicial Watch, Inc. v. FDA, 449 F.3d 141, 151 (D.C. Cir. 2006)).

CREW does not dispute that the omitted documents meet these twin requirements. Instead, it claims the privilege does not shield the documents for three other reasons: (1) the FEC failed to properly invoke the privilege; (2) the FEC's obligation to "make public" the rationale for its votes renders the privilege inapplicable; and (3) even if once predecisional, the documents have lost that status.[9] Reply [ECF No. 25] at 7–11. These arguments fall short.

*First*, whether the agency properly asserted the deliberative-process privilege. CREW claims that to invoke the privilege, the agency must submit "(1) a formal claim of privilege by the head of the relevant department; (2) based on actual personal consideration by that official; and (3) a detailed specification of the information for which the privilege was claimed and why it properly falls within the scope of the privilege." Id. at 7. But that is not required in record-

---

[9] CREW advanced the first rationale in the context of its motion to compel. Though the Court could likely cast the rationale aside as a vestige of the earlier motion, it will address it nonetheless.

11

review cases.[10]  Because "predecisional and deliberative documents are not part of the administrative record to begin with" and because the agency's designation of the record is entitled to a presumption of regularity, the agency does not need to take additional measures—such as "logg[ing]" the documents in a privilege log—to withhold them from the record.  Oceana I, 217 F. Supp. 3d at 318 (cleaned up); see also Oceana II, 290 F. Supp. 3d at 85 ("In light of the presumption of regularity that is afforded an agency's certification that it compiled the complete record, it is not enough for [the plaintiff] to simply contend, as it does here, that the agency must add all the documents it considered.").  Indeed, as this Court has previously held, while an agency may not be able to "wholesale withhold a category of documents based only on their form—e.g., all memos from junior agency personnel to senior agency personnel—it may do so if the category of documents withheld by definition meets the requirements of the deliberative process privilege—e.g., all predecisional and deliberative memos from junior agency personnel to senior agency personnel." Oceana II, 290 F. Supp. 3d at 84–85.  "And to justify this withholding, the [agency] must simply represent that those documents meet the requirements of

---

[10] Because CREW's original motion was one to compel, all the cases it cites fall outside the agency record-review context.  See Landry v. FDIC, 204 F.3d 1125, 1134 (D.C. Cir. 2000) (FDIC sought to assert privilege over documents requested as part of pre-trial discovery before an administrative law judge); Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 397–98 (D.C. Cir. 1984) (the Department of State asserted privilege over documents sought via third-party subpoena); Doe v. District of Columbia, 230 F.R.D. 47, 50–51 (D.D.C. 2005) (D.C. asserted privilege to avoid testifying on a certain subject in a 30(b)(6) deposition); Brown v. District of Columbia, No. 10-cv-2250 (PLF), 2021 WL 1439741, at *1, *5 (D.D.C. Apr. 16, 2021) (D.C. asserted privilege to shield documents from discovery in a Rehabilitation Act and Americans with Disabilities Act suit); Cobell v. Norton, 213 F.R.D. 1, 6–7 (D.D.C. 2003) (Department of Interior sought to assert privilege over an attachment to a report filed by a court monitor).  Similarly, CREW claims that the FEC waived its defenses and privileges by failing to "timely file an objection to a request for production," Reply at 6 (quoting Fonville v. District of Columbia, 230 F.R.D. 38, 42 (D.D.C. 2005)), but CREW cites to standards and cases outside the record-review context.

the deliberative process privilege." Id. Put simply, the agency need not come forward with the detailed affidavits CREW claims are required.[11]

*Second*, CREW claims the FEC's disclosure obligations prevent the agency from asserting the deliberative-process privilege over the withheld documents. FECA requires the Commission to "make public" its determination "that a person has not violated [the] Act." 52 U.S.C. § 30109(a)(4)(B)(ii). And under the applicable regulations, "[o]pinions of Commissioners rendered in enforcement cases[,] General Counsel's Reports[,] and non-exempt 52 U.S.C. 30109 investigatory materials shall be placed on the public record of the Agency" once "the Commission has voted to close [] an enforcement file." 11 C.F.R. § 5.4(a)(4). Citing these provisions, CREW claims the FEC "must satisfy [its] obligation by producing materials in the record that predate the vote to close." Pl.'s Resp. at 3. This claim founders on the very regulation CREW cites. 11 C.F.R. § 5.4(a)(4) directs the agency to include only "non-exempt" materials on the public record and therefore does not capture deliberative documents. 11 C.F.R. § 5.4(a)(4).

More broadly, though, CREW's claim seems to be that—in the absence of "contemporaneous in-record materials" reflecting the Commissioners' rationale—the FEC's disclosure obligations entitle CREW to documents reflecting the agency's deliberations. See Pl.'s Resp. at 3–4. CREW again misfires. Where, as here, the Commissioners deadlock and then dismiss a case, the D.C. Circuit has required "the Commissioners to state their reasons why." Democratic Cong. Campaign Comm. v. FEC ("DCCC"), 831 F.2d 1131, 1132 (D.C. Cir. 1987);

---

[11] Some courts have found that, "since privileged and deliberative materials are not part of the administrative record as a matter of law, efforts in APA cases to obtain access to, or logs of, such materials are properly analyzed under the standard applicable to disclosure of extra-record material." Stand Up for California! v. Dep't of Interior, 71 F. Supp. 3d 109, 123 (D.D.C. 2014). As the Court decides below, CREW is not entitled to extra-record material.

see also FEC v. Nat'l Republican Senatorial Comm., 966 F.2d 1471, 1476 (D.C. Cir. 1992) (explaining that though the "DCCC opinion limited itself to its facts, [the circuit] ha[s] since expanded it to control generally situations in which the Commission deadlocks and dismisses"). And the required format for that explanation is the controlling Commissioners' statement of reasons. See ECU, 69 F.4th at 921. "Absent [such] an explanation," courts have not peered behind the curtain and scrutinized pre-vote deliberations or other internal communications to assess whether the agency acted "contrary to law." See DCCC, 831 F.2d at 1132 ("Absent an explanation by the Commissioners for the FEC's stance, we cannot intelligently determine whether the Commission is acting 'contrary to law.'" (cleaned up)). Instead, the circuit's practice has been to order remand of the case to the FEC "with instructions to the Commissioners to explain coherently the path they are taking." DCCC, 831 F.2d at 1133. Indeed, as recently as ECU, the Circuit held that another possible stand-in for the controlling Commissioners' statement of reasons—the FEC's "failed [prosecutorial discretion] vote"—was not "a substitute for [a contemporaneous] statement" and ordered the district court to remand the case to the agency "for further action." 69 F.4th at 921, 924; see also Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985) ("[I]f the reviewing court [] cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). Because the current motion is just one to complete or supplement the record, the Court will not take the step of remanding the case to the FEC. But the upshot for the present motion is: The lack of a controlling statement of reasons does not strip deliberative-process documents of their protection.

*Third*, CREW claims that even if the documents were predecisional when prepared, the agency has since adopted them. Reply at 8–11; see also Pl.'s Resp. at 3. "[E]ven if [a]

14

document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980). CREW argues that "the grounds the Commission discussed and that won the day in the respective votes" were "by necessity, adopted as the FEC's position on the issues" and that documents reflecting those discussions are therefore not shielded from disclosure. Reply at 10–11.

But a document is not adopted simply because it reflects or accords with the agency's final position on an issue. "To adopt a deliberative document, it is not enough for an agency to make vague or equivocal statements implying that a position presented in a deliberative document has merit; instead, the agency must make an '*express*[ ]' choice to use a deliberative document as a source of agency guidance." Jud. Watch, Inc. v. Dep't of Def., 847 F.3d 735, 739 (D.C. Cir. 2017) (emphasis in original) (quoting NLRB v. Sears Roebuck & Co., 421 U.S. 132, 161 (1975)); see also Afshar v. Dep't of State, 702 F.2d 1125, 1143 n.22 (D.C. Cir. 1983) (suggesting that an agency does not strip a memo of its predecisional character by silently "carr[ying] out" the memo's recommended course of action). And, here, CREW offers nothing to indicate that the Commissioners made the "express choice" to use any of the challenged documents in their explanations for their votes.

In sum, then, the deliberative-process privilege shields the omitted documents, and the administrative record is complete without them.

2. *Attorney-Client Privilege and Work-Product Doctrine*

CREW also contends that the FEC has failed to establish that the attorney-client privilege or work-product doctrine protect the challenged documents from disclosure. "The attorney-

15

client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services [and] . . . communications from attorneys to their clients if the communications 'rest on confidential information obtained from the client.'" Tax Analysts v. IRS, 117 F.3d 607, 618 (D.C. Cir. 1997) (quoting In re Sealed Case, 737 F.2d 94, 99 (D.C. Cir. 1984)).  The work-product doctrine shields "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." F.T.C. v. Boehringer Ingelheim Pharms., Inc., 778 F.3d 142, 149 (D.C. Cir. 2015) (quoting Fed. R. Civ. P. 26(b)(3)(A)).  In the governmental context, "the 'client' may be the agency and the attorney may be an agency lawyer."  Tax Analysts, 117 F.3d at 618.  "The party asserting the [attorney-client] privilege bears the burden of demonstrating with sufficient certainty that the elements [of the privilege] exist."  Oceana, Inc. v. Guitterez, No. 08-cv-00318 (ESH), 2009 WL 8725110, at *7 (D.D.C. May 28, 2009); see also United States v. ISS Marine Servs., Inc., 905 F. Supp. 2d 121, 134 (D.D.C. 2012) ("It is the proponent of the work-product protection that bears the burden of demonstrating that the prospect of litigation was an independent, legitimate, and genuine purpose for the document's creation.").  Accordingly, courts often assess agencies' privilege claims through privilege logs or *in camera* review.  See, e.g., Friends of Animals, Inc. v. Jewell, 185 F. Supp. 3d 60, 66 (D.D.C. 2016) (attorney-client privilege); Sendra Corp. v. Magaw, No. 94-cv-0949 (TAF), 1995 WL 434451, at *1 (D.D.C. July 13, 1995) (work-product doctrine).

The FEC has not satisfied its burden.  In cursory fashion, it asserts that Commissioners "regularly rely" on oral and written communications from the FEC's OGC.  Opp'n at 20.  But it has not submitted a privilege log, or other documentation, to justify applying the privilege or doctrine to any particular records.  Because the Court concludes that the FEC need not release

16

the challenged documents for other reasons, it will not require the FEC to submit a privilege log or the documents for *in camera* review. But the agency has not, on the present record, demonstrated that the attorney-client privilege or work-product doctrine shield the documents from disclosure.

### B. Supplementation of the Record

Next, CREW contends that even if the omitted documents fall outside the administrative record, the FEC ought to supplement the record with them. Pl.'s Resp. at 4–5. Again, supplementation is limited to three "unusual circumstances": "(1) if the agency deliberately or negligently excluded documents that may have been adverse to its decision, (2) if background information is needed to determine whether the agency considered all the relevant factors, or (3) if the agency failed to explain administrative action so as to frustrate judicial review." City of Dania Beach, 628 F.3d at 590 (cleaned up).

As to the first circumstance, CREW notes several shortcomings in the FEC's compilation of the record. The FEC failed to appear in this case for over a year and a half (and accordingly also did not produce the record during that time); did not respond to CREW's requests for production; and, when it eventually did appear, omitted documents from the record that, in CREW's view, "were relied on by FEC counsel in its report to the Commission." Reply at 3–4. But, to the extent any of these deficiencies suggest the FEC deliberately or negligently excluded adverse documents, it has since remedied these problems by appearing, producing the record, and agreeing to include the previously omitted documents in the record. See Reply at 4.[12]

---

[12] Advancing another argument in support of supplementation, CREW claims the FEC exhibited bad faith. See Pl.'s Resp. at 4–5. The D.C. Circuit has considered bad faith as relevant to motions for supplementation and extra-record discovery. See James Madison Ltd. by Hecht v. Ludwig, 82 F.3d 1085, 1095 (D.C. Cir. 1996) (supplementation); Cmty. for Creative Non-

The second and third "unusual circumstances" also do not warrant supplementation here. As described above, even in the absence of a contemporaneous controlling statement of reasons, the Court cannot consult the disputed documents to evaluate whether the FEC acted "contrary to law." Those documents would therefore not aid in judicial review or allow the Court to determine whether the agency considered the relevant factors. Thus, CREW's supplementation request fares no better than its request for completion.

C. Extra-Record Discovery

Finally, whether CREW is entitled to extra-record discovery. "[S]uch discovery is permissible in only two circumstances: [1] when it provides the only possibility for effective judicial review and . . . there have been no contemporaneous administrative findings (so that without discovery the administrative record is inadequate for review), and [2] when there has been a strong showing of bad faith or improper behavior (so that without discovery the administrative record cannot be trusted)." Saratoga Dev. Corp. v. United States, 21 F.3d 445, 458 (D.C. Cir. 1994) (cleaned up). As noted above, production of the omitted documents would not aid in judicial review. And though CREW hints at bad faith, it fails to deliver the goods. Courts have suggested that bad faith in this context can occur in two ways: (1) bad faith in compiling the record and (2) bad faith in the agency's underlying decision.

*First*, though the FEC did not appear and produce the record on time, CREW has not suggested that—now that the agency has assembled the record—it intentionally "skewed" the record or otherwise compiled it in bad faith. See Theodore Roosevelt Conservation P'ship v. Salazar, 616 F.3d 497, 515 (D.C. Cir. 2010) ("[A]n agency may not skew the record for review

---

Violence, 908 F.2d at 997–98 (extra-record discovery). The Court assesses CREW's bad-faith arguments below in its discussion of extra-record discovery.

in its favor by excluding from that record information in its own files which has great pertinence to the proceeding in question." (cleaned up)). The FEC did originally exclude from the record 397 pages produced by Freedom Vote, which "were relied on by agency staff but inadvertently not made electronically available to the Commissioners." Stip. & Joint Mot. at 1. But given that "[j]udicial review of administrative action should normally be based on the full administrative record that was before a *decisionmaker* at the time challenged action was taken," and the documents here appear not to have been before the Commissioners, the Court does not find their omission amounted to bad faith. Cmty. for Creative Non-Violence, 908 F.2d at 998 (emphasis added) (cleaned up); see also Theodore Roosevelt Conservation P'ship, 616 F.3d at 515 ("An agency does not 'skew' the administrative record when it does not include agency documents that were not used in making its decision but were available to commenters."); but see Fed. Deposit Ins. Corp. v. Bank of Am., N.A., No. 17-cv-00036 (EGS/DAR), 2020 WL 2463934, at *4 (D.D.C. Jan. 27, 2020) ("[T]here are circumstances where information 'indirectly' before decisionmakers should be considered part of the administrative record."). In any event, the FEC has agreed to include those 397 pages in the record. Stip. & Joint Mot. at 2.

*Second*, as to bad faith in the underlying decision, CREW broadly alleges that: (1) the Commissioners prejudged the matter and (2) the controlling Commissioners fabricated their post-hoc rationale. Pl.'s Resp. at 2 n.1, 4. But these accusations are wholly conclusory. CREW has not made the requisite "significant showing—variously described as a strong, substantial, or prima facie showing"—that extra-record discovery would unearth such conduct. Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd., 663 F.3d 476, 487 (D.C. Cir. 2011) (cleaned up).[13] In

---

[13] Without citation or attribution, CREW claims the FEC "suggest[ed] that records of deliberation may not in fact exist because the commissioners may not have deliberated at all, but rather prejudged the matter." Pl.'s Resp. at 2 n.1. The Court will not credit this claim in light of

James Madison Ltd. by Hecht v. Ludwig, the D.C. Circuit found a similarly "conclusory" claim that the agency had a "predetermined agenda" insufficient to demonstrate bad faith.  82 F.3d 1085, 1095 (D.C. Cir. 1996).  In fact, the plaintiff in Ludwig submitted affidavits to support its assertion of bad faith, but its evidence still "f[e]ll far short of the 'strong showing' of bad faith required."  Id. (citing Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971)).  With no evidence to back its claims, CREW's allegations fall shorter still.  The Court thus denies its request for extra-record discovery.

IV. **Conclusion**

For these reasons, it is hereby

**ORDERED** that [ECF No. 6] Plaintiff's Motion to Compel is DENIED.  It is further

**ORDERED** that, by May 24, 2024, the parties shall file a joint status report proposing next steps in this proceeding.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date: May 10, 2024

---

the FEC's representation that "[t]he Commission engaged in a detailed, lengthy process to evaluate the allegations raised in MUR 7465"—a process that "required extensive deliberation between Commissioners to finalize their positions on reason to believe, probable cause, and prosecutorial discretion determinations."  Opp'n at 18.