**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON**, <br><br> Plaintiff, <br><br> v. <br><br> **FEDERAL ELECTION COMMISSION**, <br><br> Defendant. | Case No. 22-cv-35 (CRC) |

## MEMORANDUM OPINION

In 2018, Citizens for Responsibility and Ethics in Washington ("CREW") filed a complaint with the Federal Election Commission alleging that an organization called Freedom Vote had violated federal election law. Three years later, the FEC deadlocked 3–3 over whether to keep investigating Freedom Vote. Without the four votes needed to move forward, the FEC closed the case. Under binding D.C. Circuit precedent, the commissioners who voted not to proceed were required to explain their votes at that time. Yet they failed to do so.

In an ordinary case, the Court would end this opinion here, enter judgment in CREW's favor, and declare the FEC's dismissal of CREW's complaint contrary to law. That declaration would start a 30-day clock for the FEC to fix its error. If the FEC did not do so, then CREW would be able to sue Freedom Vote itself. The FEC, however, proposes a different approach known as a "voluntary remand." It urges the Court to return this case to the FEC so that it can re-vote and re-issue an explanation. And it asks the Court not to declare the FEC's dismissal unlawful or start the 30-day countdown.

The Court declines the FEC's invitation to upset the statutory scheme that Congress designed. Because the commissioners' failure to explain their votes was clearly unlawful, and

the FEC has not justified departing from the path laid by the statute, the Court will grant CREW's motion for summary judgment, declare the FEC's dismissal contrary to law, and deny the FEC's motion for voluntary remand. The Court will also deny CREW's motions for attorney's fees incurred due to the parties' wrangling over the administrative record.

## I.    Background

### A.    Statutory and Regulatory Background

The Federal Election Campaign Act ("FECA"), 52 U.S.C. § 30101 *et seq.*, created a unique mechanism for enforcing federal election law that gives primary enforcement authority to the FEC and secondary authority to private citizens. At a high level, FECA's enforcement process has five steps. First, a member of the public may file a complaint with the FEC alleging that someone is violating federal election law. Id. § 30109(a)(1). Second, the FEC commissioners vote to decide what to do with that complaint and whether to initiate further enforcement actions. Id. § 30109(a)(1)–(2). Third, if the FEC does not proceed with the complaint and dismisses the case, then the complainant may appeal that dismissal to a court in this district. Id. § 30109(a)(8)(A). Fourth, if the court finds any error, it may declare the agency's dismissal "contrary to law" and give the agency 30 days to fix it. Id. § 30109(a)(8)(C); see Orloski v. FEC, 795 F.2d 156, 161 (D.C. Cir. 1986). Fifth, if—and only if—the agency fails to fix an erroneous dismissal within that period, the complainant may sue the alleged violator in federal court. 52 U.S.C. § 30109(a)(8)(C); see Campaign Legal Ctr. v. 45Committee, Inc., 118 F.4th 378, 383 (D.C. Cir. 2024).

This case mainly concerns the second step of FECA's enforcement process—specifically, what the FEC is required to do when acting on a complaint. Under longstanding D.C. Circuit precedent, when the FEC deadlocks on whether to proceed with a complaint, the commissioners

who voted against taking further action are treated as the controlling commissioners and must explain their reasoning.  Common Cause v. FEC, 842 F.2d 436, 449 (D.C. Cir. 1988); Dem. Cong. Campaign Comm. v. FEC ("DCCC"), 831 F.2d 1131, 1133 (D.C. Cir. 1987).  And like all other agencies, the FEC (or a controlling bloc of commissioners) must explain its actions when it takes them.  End Citizens United PAC v. FEC ("ECU"), 69 F.4th 916, 918 (D.C. Cir. 2023).

    B.  Factual and Procedural Background

In 2018, CREW, a campaign-finance watchdog and advocacy organization, filed a complaint with the FEC alleging that an organization called Freedom Vote violated FECA by failing to register as a political committee.  A.R. 1–2.  According to CREW, Freedom Vote spent money on political activity in the 2016 Ohio Senate race.  Id.  The FEC initially voted unanimously to find that there was reason to believe that Freedom Vote had violated FECA and authorized the FEC General Counsel to investigate further.  Id. 105.  The General Counsel conducted a thorough investigation and recommended that the FEC find probable cause supporting a FECA violation.  Id. 1559.

In November 2021, the FEC, with a somewhat different roster of commissioners, deadlocked 3–3 over whether to find probable cause and proceed further.  A.R. 1815.  Unable to move forward, the FEC voted 4–1 to close the case.  Id. 1816.  The controlling commissioners who voted against finding probable cause did not explain their reasoning.

Displeased with the short shrift its complaint received, CREW sued in January 2022 to challenge the FEC's dismissal.  Two months later (and four months after the dismissal), the three controlling commissioners finally issued their justification and explained that their votes were at least partially informed by constraints on the FEC's resources.  See A.R. 1835–45.

Initially, the FEC did not appear in court to defend this lawsuit, so the Clerk entered default.  See ECF 5.  The FEC's absence in turn led CREW to undertake rather creative efforts to obtain the administrative record necessary to review the FEC's actions.  It moved to compel production of the record, which the Court initially denied on the ground that it likely lacked jurisdiction to review the FEC's dismissal for prosecutorial discretion.  Minute Order of February 8, 2023.  The Court later reconsidered that decision in light of intervening D.C. Circuit authority, concluded that it had jurisdiction, and ordered the FEC to respond.  First Minute Order of October 30, 2023.  The FEC then appeared and produced the administrative record.  ECF 12; ECF 15.  Because discovery in cases challenging agency action is exceedingly rare, the Court construed CREW's motion to compel as a motion to supplement the administrative record.  Minute Order of April 3, 2024.  After another round of briefing, the Court denied the motion.  Mem. Op. & Order of May 10, 2024.

That procedural thicket eventually led to the motions now pending before the Court.  CREW moved for attorney's fees under Federal Rule of Civil Procedure 37(a)(5), which permits a party to recover its fees if it successfully moves to compel discovery.  The parties also filed a joint status report, in which they agreed that remanding this case to the FEC was appropriate but disagreed over the precise mechanism for doing so.  That disagreement led the FEC to move for a voluntary remand and CREW to move for summary judgment, or, in the alternative, default judgment.  All three motions are fully briefed and ripe for the Court's review.

## II.    Standard of Review

Federal Rule of Civil Procedure 56 provides that a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To demonstrate an

entitlement to judgment as a matter of law under FECA, the plaintiff must show that the FEC's dismissal of its complaint was "contrary to law." 52 U.S.C. § 30109(a)(8)(C). A dismissal is contrary to law "if (1) [T]he FEC dismissed the complaint as a result of an impermissible interpretation of [FECA], . . . or (2) if the FEC's dismissal of the complaint, under a permissible interpretation of the statute, was arbitrary or capricious, or an abuse of discretion." Orloski, 795 F.2d at 161.

### III. Analysis

Before the Court goes further, it will first vacate the Clerk's entry of default against the FEC for two reasons. First, Federal Rule of Civil Procedure 55, which governs defaults, carries an "implicit preference for judgments on the merits" and "cautions against default as a sanction for curable non-response or lack of diligence." Grimes v. Dist. of Columbia, 794 F.3d 83, 92 (D.C. Cir. 2015). Second, vacating the default here would not prejudice CREW. See Keegel v. Key West & Caribbean Trading Co., 627 F.2d 372, 373 (D.C. Cir. 1980) (listing prejudice to plaintiff as criterion for consideration). For the reasons explained below, the Court agrees that summary judgment in CREW's favor is appropriate. As such, vacating the default would, if anything, benefit CREW by giving it a favorable judgment on the merits. Indeed, CREW does not appear to oppose that outcome. See CREW Reply at 9 ("CREW shares Rule 55's preference for judgment on the merits, and so requests summary judgment." (cleaned up)).

On to the meat and potatoes. The Court will begin with why the FEC's dismissal of CREW's complaint was plainly contrary to law before explaining why summary judgment in CREW's favor is appropriate rather than a voluntary remand. Finally, it will deny CREW's motion for attorney's fees.

A.  Contrary to law

The FEC's dismissal of CREW's complaint was contrary to law because the agency failed to explain its actions at the time of the dismissal.

Two basic principles of administrative law are relevant here.  First, when an agency acts, it must give a "satisfactory explanation for its action[.]"  Ohio v. EPA, 603 U.S. 279, 292 (2024) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)); Tourus Recs., Inc. v. DEA, 259 F.3d 731, 737 (D.C. Cir. 2001).  If it does not, then its actions are arbitrary or capricious and must be set aside—with the possible exception of remand without vacatur, which is essentially what the FEC is asking for here.  See Tourus Recs., 259 F.3d at 737.

The second principle is a timing requirement:  Agencies must explain their actions at the same time that they take them.  This "foundational principle of administrative law" is over 80 years old and ensures that courts and litigants are not left "chas[ing] a moving target."  Dep't of Homeland Sec. v. Regents of the Univ. of Calif., 591 U.S. 1, 20, 23 (2020) (quotation marks omitted); SEC v. Chenery Corp., 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").  To enforce this principle, courts cannot consider reasons offered by the agency after it acts.  Regents, 591 U.S. at 23; see Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971) ("[P]ost-hoc rationalizations . . . have traditionally been found to be an inadequate basis for review." (cleaned up)).

These two principles apply with equal force to the FEC.  For nearly four decades, D.C. Circuit precedent has made clear that when the FEC, as it did here, deadlocks 3–3 over whether to proceed further with a complaint, the commissioners who voted against enforcement must explain their reasons for doing so.  Common Cause, 842 F.2d at 449; DCCC, 831 F.2d at 1133.

Against the backdrop of ordinary principles of administrative law that long predate those cases, one would expect that such reasoning must be disclosed alongside the decision not to act and that courts cannot consider a belated explanation. To remove any doubt, the D.C. Circuit recently held exactly that, making clear that "well-established circuit precedent require[es] the Commission to provide a timely explanation of its reason for dismissing an administrative complaint." ECU, 69 F.4th at 918.

Applying those principles to this case leads to the straightforward conclusion that the FEC's dismissal here was contrary to law. When the FEC voted to close the file, and therefore dismiss CREW's complaint, the controlling commissioners were required, by law, to explain their reasoning at the time of the dismissal. But everyone agrees they did not do so. FEC Reply at 20 ("The Commission[] issu[ed] . . . an untimely explanation here."). Their explanation came some four months later—too late for the Court to consider it. As such, for purposes of the Court's review, the FEC's dismissal stands entirely unexplained. And an unexplained dismissal is arbitrary or capricious and contrary to law. See Orloski, 795 F.2d at 161.

Resisting this conclusion, the FEC argues that the lack of a timely explanation makes review of the FEC's dismissal impossible because the Court is not in a position to assess the substance of the agency's reasoning. FEC Reply at 17–19. This argument makes little sense. Again, the absence of reasoning is contrary to law in and of itself. Prior cases have held time and again that an agency's failure to offer a satisfactory explanation makes the decision arbitrary or capricious. Ohio, 603 U.S. at 292; State Farm, 463 U.S. at 43; Tourus Recs., 259 F.3d at 737. The Court's prior opinion in this case does not call any of this into question, as the FEC suggests. See FEC Reply at 17. Rather, all the Court said previously was that the lack of a final decision on the record did not warrant supplementing the record, not that the lack of a final decision

insulated the FEC's dismissal from judicial review.  See Mem. Op. & Order of May 10, 2024 at 13–14.

The FEC's attempts to distinguish between untimely explanations and nonexistent ones are also unsuccessful.  FEC Reply at 16–17.  As far as administrative law is concerned, an untimely explanation is no explanation at all.  In Department of Homeland Security v. Regents of the University of California, 591 U.S. 1 (2020), the government offered two memos explaining why it was rescinding the Deferred Action for Childhood Arrivals ("DACA") program: one issued at the same time as the rescission and another nine months later.  Id. at 20.  The Supreme Court first held that it could not consider the second memo because it was a post-hoc rationalization.  Id.  Next, the Court observed that the only explanation properly before it entirely failed to consider reliance interests.  Id. at 28.  Specifically, the memo did not explain why the government was rescinding DACA even though doing so would take benefits away from undocumented persons who had come to rely on them.  Id. at 29.  And because the agency had offered no timely explanation as to that issue, the Court held that the entire rescission was unlawful—even though there was a second, untimely explanation that did discuss reliance interests.  Id. at 33; id. at 66 (Kavanaugh, J., concurring in part and dissenting in part) (noting that the second memo "expressly addressed the reliance interests of DACA recipients").

In other words, Regents makes clear that if the agency does not offer a timely explanation as to one important aspect of its decision, then the challenged action is unlawful.  And if failing to explain just one part of a decision on time makes the whole unlawful, then failing to explain every single part of a decision on time leads to the same outcome.

B.  <u>Next steps</u>

For the above reasons, based on the undisputed facts before the Court and long-established principles of administrative law, the FEC's dismissal of CREW's complaint was arbitrary and capricious and contrary to law.  Under Rule 56, CREW is entitled to summary judgment.  FECA then permits the Court to declare the dismissal of CREW's complaint contrary to law and start a 30-day clock for the FEC to fix its error.  52 U.S.C. § 30109(a)(8)(C).  To avoid that outcome, the FEC instead seeks an alternative approach: voluntary remand without entering judgment in CREW's favor.  The Court will deny the FEC's request.

Courts have "broad discretion to grant or deny an agency's motion to remand."  <u>Util. Solid Waste Activities Grp. v. EPA</u>, 901 F.3d 414, 436 (D.C. Cir. 2018).  They consider factors including "whether the agency has provided a reasoned explanation for a remand, whether its motion is frivolous or made in bad faith, and whether granting the motion would unduly prejudice the non-moving party."  <u>Cadillac of Naperville, Inc. v. NLRB</u>, 14 F.4th 703, 719 (D.C. Cir. 2021) (cleaned up).  Motions for a voluntary remand should be supported by "substantial and legitimate" reasons, and "[c]ourts generally grant such motions so long as the agency intends to take further action with respect to the original agency decision on review," such as by reconsidering it.  <u>Beasley v. Del Toro</u>, No. 22-cv-667 (CRC), 2023 WL 6312398, at *6 (D.D.C. Sept. 28, 2023) (quotation marks omitted).  Here, while the FEC does appear to intend to take further action as to its dismissal, other factors cut against voluntary remand.  Namely, the Court will exercise its broad discretion and deny the FEC's motion because the FEC's obligation to provide a contemporaneous explanation was reasonably clear at the time of its dismissal of CREW's complaint and voluntary remand would both prejudice CREW and upset Congress's carefully calibrated enforcement scheme for campaign-finance violations.

The FEC's principal basis for a voluntary remand is that it claims there was an intervening change in law that it should be allowed to address in the first instance on remand. As it points out, courts have granted remands where there has been an intervening change in law. For example, in Cadillac of Naperville v. NLRB, 14 F.4th 703 (D.C. Cir. 2021), the National Labor Relations Board decided a case under one legal standard. Id. at 719. Then, after the employer appealed to the D.C. Circuit, the Board changed its mind and decided that a different test should govern. Id. The Circuit remanded to the Board to apply the new test, reasoning that there was no evidence of bad faith and the employer was unlikely to be prejudiced because the administrative law judge who decided the case prior to the Board had already applied the Board's new test. Id. at 719–20. Other cases have similarly involved significant changes in the legal landscape. See, e.g., Util. Solid Waste Activities Grp., 901 F.3d at 437 (remanding after promulgation of new governing regulations).

This case, however, does not involve as large of a shift in the legal landscape as the one in Cadillac of Naperville. Instead, the asserted change in law is End Citizens United PAC v. FEC, 69 F.4th 916 (D.C. Cir. 2023), in which the D.C. Circuit applied "well-established circuit precedent" and held that the controlling commissioners' statement of reasons must be issued at the same time as the FEC's dismissal of the case. Id. at 918. As the Circuit's characterization suggests, that case did not work a sea change in administrative law. Instead, it simply made explicitly clear that the decades-old prohibition against post-hoc rationalizations applies to the FEC just like it applies to other agencies. See id. at 921 (agreeing with "the Supreme Court's emphasis on the 'foundational principle of administrative law that judicial review of agency action is limited to the grounds that the agency invoked when it took the action'" (quoting Regents, 591 U.S. at 20)).

10

To be sure, no binding case prior to <u>ECU</u> had expressly held that the bar against post-hoc rationalizations applied to FEC dismissals, which is perhaps why the district court had held it could consider the belated explanation in <u>ECU</u>. The FEC points to the district court's decision in <u>ECU</u> as proof that it had reason to think that a contemporaneous dismissal was not required. <u>See</u> FEC Reply at 20 n.2. But, as this Court reads it, the district court's judgment in <u>ECU</u> was based on a theory of post-hoc rationalizations that the Supreme Court had soundly rejected in <u>Regents</u>. The <u>ECU</u> district court held that it could consider a belated statement of reasons offered by the controlling commissioners because it "was written by . . . the very decisionmakers responsible for the agency action," and was "a far cry from an argument of counsel" that would be barred. <u>End Citizens United PAC v. FEC</u>, No. 21-cv-1665 (TJK), 2022 WL 1136062, at *2 (D.D.C. April 18, 2022). That reasoning largely tracks Justice Kavanaugh's opinion in <u>Regents</u>, where he wrote that the bar applies only to "after-the-fact explanations advanced by agency lawyers during litigation[.]" 591 U.S. at 67 (Kavanaugh, J., concurring in part and dissenting in part). But five justices explicitly rejected Justice Kavanaugh's approach, explaining that "the problem [with post-hoc rationalizations] is the timing, not the speaker," and the reasons for the bar against considering belated explanations "apply with equal force regardless whether *post hoc* justifications are raised in court by those appearing on behalf of the agency or by agency officials themselves." <u>Id.</u> at 23. The district court's opinion in <u>ECU</u> did not address this part of <u>Regents</u>, even though it cited other parts of the majority opinion. <u>See</u> 2022 WL 1136062, at *2.

So even if no decision had made the FEC's obligation to give contemporaneous reasons completely clear, the writing was on the wall at least by the time of <u>Regents</u>, which predated the FEC's dismissal of CREW's complaint by five months. Accordingly, in the Court's view, the FEC's claimed change in law is not a substantial reason for voluntary remand.

Furthermore, granting the motion for voluntary remand would prejudice CREW by frustrating its ability to bring a citizen suit against Freedom Vote. Recall that, under FECA, CREW may sue Freedom Vote only after the Court declares the FEC's dismissal unlawful and the FEC fails to fix the error within 30 days. See 52 U.S.C. § 30109(8)(a)(C). CREW has been waiting to sue Freedom Vote for seven years—since 2018, when it filed its complaint. If the Court were to remand without giving CREW the relief it seeks, then that delay would continue, increasing the risk that the evidence CREW needs to prove its case may vanish.[1]

Of course, remand would not indefinitely consign CREW's complaint to a forgotten backwater. The FEC has a duty to act reasonably promptly on complaints even without a 30-day clock. See 45Committee, 118 F.4th at 383. But the FEC gives the Court no sense of how long it would take for the agency to rectify its error, professing only its intention to "act within a reasonable time[.]" FEC Reply at 20; contrast Util. Solid Waste Activities Grp., 901 F.3d at 437 (granting voluntary remand where "the EPA . . . submitted a proposed timeline to the court"). Presumably, the agency would like longer than 30 days, but the Court has no idea how much longer.

Nor, for that matter, does the FEC give the Court any reason to think that 30 days is too little time for the agency to fix its mistake. After the Court enters judgment in CREW's favor and declares the agency's prior dismissal of CREW's complaint contrary to law, presumably all the FEC would have to do is review the already-written reasons for dismissal, update them if needed, hold another vote on probable cause and/or dismissal, and issue the controlling

---

[1] The Court expresses no view as to the merits of CREW's allegations against Freedom Vote and does not decide whether Freedom Vote was required to register as a political action committee. For that reason, the Court will deny ECF 39, Randy Elf's Motion for Leave to File an Amicus Brief. That brief solely addresses the standard for registration as a political committee and does not address issues relevant to this opinion. See ECF 39 at 2–3.

commissioners' statement of reasons.  Without more from the agency, the Court does not see why the FEC cannot perform that relatively modest amount of work in 30 days.

Finally, granting voluntary remand would upset FECA's enforcement scheme.  Congress gave the FEC the first bite at the apple and a second—and last—bite 30 days after a court points out any mistakes.  The statute, in other words, contemplates consequences if the FEC gets it wrong the first time.  Granting a voluntary remand would undermine that system.  It would give the FEC a free pass on its first attempt to explain itself.  And it would extend the FEC's timeline to fix its mistakes if not indefinitely then at least indeterminately.  To be clear, the Court is not saying that voluntary remand is never appropriate in a case challenging an FEC dismissal.  It is saying that, out of respect for Congress's judgment and in light of the FEC's failure to explain why a remand is necessary here, it will exercise its broad discretion and deny the FEC a mulligan.

The Court will instead grant CREW's motion for summary judgment and deny the FEC's motion for remand.  It will also declare the FEC's dismissal of CREW's complaint contrary to law and vacate it.  The FEC will have 30 days to take further action on CREW's complaint and, should it decide not to pursue the complaint further, dismiss it with an adequate, contemporaneous explanation for the dismissal.[2]

---

[2] The Court expresses no view on whether the belated explanation offered by the controlling commissioners would be adequate had it been timely.  The Court will keep this matter open at least until the end of the 30-day period for the FEC to conform to the Court's ruling, at which point the parties shall submit a joint status report on the FEC's actions on remand.  Should the FEC attempt to conform to the Court's ruling, CREW may challenge the FEC's actions in this matter.  Should the FEC fail to act within 30 days, the Court will close this case and CREW may file a separate, randomly assigned action against Freedom Vote.

C.  Attorney's fees

And now for something completely different.  CREW has also moved for attorney's fees under Federal Rule of Civil Procedure 37(a)(5)(A).  That rule permits a court to award a party its reasonable fees if the party moves to compel discovery and the motion is granted or discovery is provided after its filing.  Fed. R. Civ. P. 37(a)(5)(A).  CREW claims that, because it moved to compel discovery in a bid to obtain the administrative record from the FEC and the FEC subsequently produced the record, it is entitled to recover fees under this rule.  While the Court applauds CREW's creativity, it cannot agree.

CREW's first—and biggest—problem is that the Court *denied* its motion to compel, even after construing it as a motion to supplement the record.  See Mem. Op. & Order of May 10, 2024 at 1 ("Dogged though its efforts have been, CREW again comes up short."); Minute Order of April 3, 2024.  Under those circumstances, a different rule applies: Rule 37(a)(5)(B).  That rule provides that if a motion to compel is denied, then the party that opposed the motion may be entitled to recover its fees.  So if anything, the *FEC* may be entitled to recover fees—not CREW.

Even if the Court were to look past its denial of CREW's motion, it still would not award fees to CREW.  CREW argues that Rule 37(a)(5)(A) applies here because the FEC produced the administrative record after it moved to compel.  CREW Mot. Fees at 6–7.  That rule does permit parties to recover fees if "the disclosure or requested discovery is provided after the motion [to compel] was filed."  Fed. R. Civ. P. 37(a)(5)(A).  But strong evidence suggests that producing the administrative record is not a type of discovery.  As countless cases have recognized, discovery is generally inappropriate in cases challenging agency action, for "a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record."  Dep't of Com. v. New York, 588 U.S. 752, 780 (2019); see Limnia, Inc.

v. Dep't of Energy, 347 F. Supp. 3d 25, 29 (D.D.C. 2018) (K.B. Jackson, J.) ("[D]iscovery is generally disfavored in APA cases[.]").  Discovery in agency litigation is the rare exception, not the rule.  CTS Corp. v. EPA, 759 F.3d 52, 64 (D.C. Cir. 2014); see Dep't of Com., 588 U.S. at 781 ("[A] strong showing of bad faith or improper behavior . . . *may* justify extra-record discovery." (quotation marks omitted, emphasis added)).

By contrast, producing the administrative record *is* the rule.  It is a routine—indeed, necessary—step in cases challenging agency action.  See LCvR 7(n)(1) (requiring the agency to serve the plaintiff with a copy of the administrative record); see also Overton Park, 401 U.S. at 420 ("[R]eview [of agency action] is to be based on the full administrative record that was before the Secretary [of Transportation] at the time he made his decision.").  The stark contrast between how courts treat discovery in agency cases and how they treat the administrative record illustrates the differences between the two and buttresses the conclusion that production of the administrative record is not a form of "discovery" or "disclosure."

CREW fails to address the distinctions between discovery and production of the administrative record in agency litigation.  It offers no case holding that the administrative record is a "disclosure" or that producing it qualifies as providing "discovery" as those terms are used in the Federal Rules of Civil Procedure.  Nor does it identify a case in which a court awarded attorney's fees to a party that had to resort to creative maneuvering after the agency failed to produce the administrative record on time. Without more from CREW, the Court will not award it fees under Rule 37.

**IV.    Conclusion**

For these reasons, the Court grants CREW's motion for summary judgment, denies the FEC's motion for remand, and denies CREW's motion for attorney's fees.  A separate order accompanies this opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: <u>March 17, 2025</u>